IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO VIRUETTA, | No. C 12-0817 WHA (PR) |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS** |
| v. | |
| V. CULLEN; W. RODRIGUEZ; L. PRATT; E.C. BROWN; DR. TOOTEL; DR. ROWE; DR. LEON; CORRECTIONAL OFFICER ROMERO; CORRECTIONAL OFFICER DUKE; SGT. JACKSON; CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; Does 1-11, | (Docket No. 15) |
| Defendants. | |

**INTRODUCTION**

Plaintiff, a California prisoner, filed this pro se civil rights action complaining that defendants, officials at San Quentin State Prison ("SQSP"), caused him to receive inadequate medical care after he broke his ankle. Defendants W. Rodriguez, L. Pratt, Dr. Tootel, Dr. Rowe, Romero, Duke, and Jackson, joined by defendants E.C. Brown and V. Cullen, have filed a motion to dismiss the case on the grounds that plaintiff has not exhausted his administrative remedies. Plaintiff has filed an opposition and defendants have filed a reply brief. For the reasons discussed below, the motion to dismiss is **GRANTED**.

**STATEMENT**

Plaintiff alleges the following facts in his amended complaint:

Plaintiff broke his ankle in a fight with another inmate at SQSP on October 13, 2009 (Compl. 10). Officials took him to a hospital outside the prison, where doctors determined he needed surgery (*ibid.*). He was returned to SQSP's administrative segregation unit, and the next day defendant Dr. Rowe examined him and opined that surgery was not necessary (*ibid.*). He did not receive medical treatment for eight days until October 22, 2009, when defendant Dr. Leon examined him and sent him to a hospital where he underwent surgery on his ankle (*id.* 11-12). He then returned to administrative segregation at SQSP for 15 days, during which time he experienced pain and swelling in the leg (*id.* 12). He was then sent back to regular housing, but a "few" days later, his ankle and foot turned purple and black and his leg continued to swell (*ibid.*). He tried to go to the medical clinic, but defendants Romero and Duke, both correctional officers, did not allow it because plaintiff did not have a pass for the clinic (*ibid.*). Plaintiff was seen by Dr. Leon the next day, but Romero and Duke required plaintiff to walk to the medical clinic without assistance (*id.* 12-13). Dr. Leon sent plaintiff to a hospital again where he received a second surgery due to an infection in his leg, and he remained in that hospital for three days before transferring to another hospital for further recovery (*id.* 13). Plaintiff asserts that he currently suffers from a permanent disability in his ankle (*id.* 5).

**ANALYSIS**

**I.   STANDARD OF REVIEW**

Nonexhaustion under § 1997e(a) is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints. *Id.* at 215-17.

A nonexhaustion issue should be raised in an unenumerated Rule 12(b) motion rather than in a motion for summary judgment. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the Court

may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. If the Court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal without prejudice. *Id.* at 1120.

**II.   ANALYSIS**

Defendants argue that plaintiff has failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). Compliance with the exhaustion requirement is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 739-40 & n.5 (2001). The administrative remedies need not meet federal standards, nor need they be "plain, speedy and effective." *Porter*, 534 U.S. at 524.

The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *see also Marella v. Terhune*, 568 F.3d 1024, 1028 (9th Cir. 2009) (if a prisoner had full opportunity and ability to file a grievance timely, but failed to do so, he has not properly exhausted his administrative remedies ) (citing *Woodford*, 548 U.S. at 88). "The text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion." *Woodford*, 548 U.S. at 92. Therefore, the PLRA exhaustion requirement requires proper exhaustion. *Ibid.* "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91 (footnote omitted).

California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of

3

appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. *Id.* § 3084.5; *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). This satisfies the administrative remedies exhaustion requirement under § 1997e(a). *Id.* at 1237-38.

Defendants have shown that plaintiff did not exhaust any administrative appeals concerning defendants' failure to provide adequate medical care for his ankle. They have submitted evidence, undisputed by plaintiff, that San Quentin officials log and track all administrative appeals received from prisoners (Tate Decl. ¶¶ 7-8; Harless Decl. ¶¶ 2-3; Lozano Decl. ¶ 3). The parties do not dispute that when an inmate has claims regarding their health care, they are required to submit their appeal on a Health Care Appeal form to San Quentin's Health Care Appeals Office (Harless Decl. ¶ 5; Cal Code Regs. 3084.2(a)).

Defendants' evidence shows a record of only one administrative appeal filed by plaintiff through the final (Director's) level of administrative review, but this was a group appeal that did not concern the medical care for plaintiff's ankle (Tate Decl. ¶¶ 10-11, 15 & Ex. B; Lozano Decl. ¶¶ 5-6 & Ex. A; Harless Decl. ¶¶ 14).

Defendants have submitted evidence that San Quentin's Health Care Appeals Office did receive an administrative appeal from plaintiff concerning the ankle treatment alleged in this action (Harless Decl. ¶¶ 7-8; Ex. A, B). However, because the appeal was filed in October 2010, approximately 11 months after the allegedly inadequate care for his ankle took place, it was "screened out" as untimely (*id.* ¶¶ 9-13; Exs. B, D ). *See* Cal. Code Regs. 3084.1(a) (requiring administrative appeal be filed within 15 days of the actions being challenged). Plaintiff does not allege, and the parties' papers do not indicate, that he was unable to the appeal earlier or within the 15-day deadline of defendants alleged actions in October and November 2009. This untimely appeal does not satisfy the exhaustion requirement. *See Woodford*, 548 U.S. at 84; *Marella*, 568 F.3d at 1028.

The Health Care Appeal Office received one prior administrative appeal regarding

4

1  plaintiff's ankle, in June 2010, but that appeal concerned the adequacy of the pain medication
2  he was receiving at the time, not the allegedly inadequate medical care he received seven
3  months earlier, which is the subject of the claims in the instant case (Harless Decl. Ex. A). In
4  any event, there is no evidence that that appeal was pursued to the Director's level of review
5  (*ibid.*).

6  Defendants' evidence shows that additional appeals filed by plaintiff did not concern the
7  actions of defendants complained herein, were filed long after the 15-day deadline for
8  administratively appealing defendants' action, and/or failed to follow other critical procedures
9  such as submitting the appeals to the proper prison officials (*see ibid.*; Tate Decl. ¶¶ 10-14 &
10 Exs. B–L). Indeed, the first of these appeals was filed in September 2010, approximately 10
11 months after the alleged actions by defendants took place (Tate Decl. Ex. B). Plaintiff does not
12 argue or allege why he could not have filed an administrative appeal concerning his claims
13 within the deadline or in accordance with the proper procedures for filing administrative
14 appeals. Consequently, these appeals also do not satisfy the exhaustion requirement. *See*
15 *Woodford*, 548 U.S. at 84; *Marella*, 568 F.3d at 1028.

16 Plaintiff alleges that he filed two administrative appeals that were lost (Compl. 8-9).
17 One allegedly concerned disciplinary actions taken against him for fighting, and thus does not
18 pertain to or exhaust the medical claims he raises here (*id.* 9). Plaintiff does not allege what the
19 other appeal was about or to whom it was submitted (*ibid.*). Plaintiff has not submitted any
20 evidence of any appeals he filed, such as copies of the appeals, any of his own records showing
21 what appeals he filed, or any copies of the letters from prison officials notifying him of their
22 decision on his appeals. Defendants have submitted evidence that SQSP officials searched the
23 health care records for these alleged appeals, but none could be located (Harless Decl. ¶ 12 &
24 Ex. A). Absent evidence of any other appeals filed by plaintiff, and in light of defendants'
25 evidence that no other appeals appear in their records that regularly track inmate appeals, his
26 allegations that he filed additional appeals does not establish their existence let alone that they
27 properly exhausted any of his claims.

28

5

Plaintiff also argues that he filed a petition for a writ of habeas court in the state courts which put defendants "on notice" of his claims. As explained above, the PLRA requires exhaustion by completing the prison's administrative appeals process, not by filing claims in state court. His filings in state court are therefore irrelevant to whether he properly exhausted his claims under the PLRA. Lastly, plaintiff states that defendants' motion is "premature." Defendants filed their motion according to the schedule set forth in the order of service. The order of service informed plaintiff that defendants could file a motion to dismiss on exhaustion grounds, and also of the nature of such a motion and what is required to oppose it. Defendants again provided the same warning to plaintiff when they filed the motion to dismiss. In addition, defendants provided plaintiff with all of the discovery materials in their possession relevant to the exhaustion issue as exhibits and declarations in support of their motion to dismiss. Thus, further discovery would not have garnered plaintiff any additional evidence to support his opposition. Defendants' motion is not premature insofar as plaintiff had more than sufficient information about the nature of the motion, had all the available discovery related to the issues raised in the motion, and had sufficient time in which to prepare his opposition to the motion.

**CONCLUSION**

For the foregoing reason, defendants' motion to dismiss (docket number 15) is **GRANTED.**

The clerk shall enter judgment for defendants and close the file.

**IT IS SO ORDERED.**

Dated: January   22  , 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\CR.12\VIRUETTA0817.MTDFTE.wpd